1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| ELORA ELMER, Guardian Ad Litem for C.R.F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:22-cv-01045-SAB <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT <br><br> (ECF Nos. 25, 30) |

12
13
14
15
16
17
18
19

**I.**

**INTRODUCTION**

20
21

Elora Elmer, on behalf of Minor Plaintiff C.R.F. ("Plaintiff") seeks judicial review of a

22

final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying

23

Plaintiff's application for supplemental security income ("SSI") benefits pursuant to the Social

24

Security Act.  Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's

25

brief.  The matter is currently before the Court on the parties' briefs, which were submitted

26

without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below,

27
28

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 16, 18, 19.)

1

Plaintiff's appeal shall be denied and Defendant's cross-motion for summary judgment shall be granted.

## II.

## BACKGROUND[2]

On January 23, 2019, a Title XVI application for SSI was protectively filed on behalf of Plaintiff, who was five years old at the time, alleging a period of disability beginning on June 22, 2014 (age one) due to "ADHD, ADD, behavioral issues, PTSD, and anxiety which impedes his ability to regulate his emotions, control impulsivity, and maintain attention and concentration." (See Admin. Rec. ("AR") 202, 285, ECF Nos. 20-1, 20-2; see also ECF No. 25 at 4 (citing AR 159–67, 177).)  Plaintiff's application was initially denied on September 23, 2019, and denied upon reconsideration on November 18, 2019.  (AR 186–97, 213–17.)  On December 15, 2020, Plaintiff appeared via phone teleconference (with his mother), due to the extraordinary circumstance presented by the Coronavirus pandemic, for a hearing before Administrative Law Judge Scot Gulick (the "ALJ").  (AR 152–76.)  Plaintiff and his mother, Elora Elmer, testified during the telephonic conference.  Dr. Donald Dian, Ph.D., an impartial medical expert, also testified at the hearing.  (AR 168–76.)  Although informed of his right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative.[3]  After the hearing, the ALJ sent Plaintiff a copy of his case file and offered him 14 days to raise any objections to the evidence of record.  (AR 201.)  On December 18, 2020, the ALJ sent Plaintiff a copy of additional medical records obtained after the hearing was held.  (Id. (citing Ex. 16E).)  Plaintiff was given additional time to respond.  However, Plaintiff did not respond, request a supplemental hearing, or take any other action.  Accordingly, the ALJ entered the additional proffered evidence into the record and considered it in rendering his decision.  On February 25, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 198–212.)  On February 3, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.

[3] Plaintiff is currently represented by attorney Jonathan Pena, of the Law Offices of Pena & Bromberg, PLC.  (See ECF No. 25.)

1  decision the final decision of the Commissioner of Social Security.  (See AR 9–15.)

2  Plaintiff initiated this action in federal court on August 18, 2022, and seeks judicial review

3  of the denial of his application for SSI benefits under Title XVI.  (ECF No. 1.)  The

4  Commissioner lodged the administrative record on January 17, 2023.  (ECF No. 20.)  On May 3,

5  2023, Plaintiff filed a motion for summary judgment as to his appeal of the decision of the

6  Commissioner of Social Security.  (ECF No. 25.)  On July 10, 2023, Defendant filed a cross-

7  motion for summary judgment in opposition to Plaintiff's brief.  (ECF No. 30.)  No reply was

8  timely filed, and the matter is deemed submitted.

9  **III.**

10  **LEGAL STANDARD**

11  **A.      The Disability Evaluation Under Childhood Standards**

12  An individual under the age of eighteen will be considered disabled if he has "a medically

13  determinable physical or mental impairment or combination of impairments that causes marked

14  and severe functional limitations, and that can be expected to cause death or that has lasted or can

15  be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.906.

16  The Social Security regulations provide a three-step process in determining whether a child is

17  disabled.  See 20 C.F.R. § 416.924.  First, the ALJ must determine whether the child is engaged

18  in substantial gainful activity.  20 C.F.R. § 416.924(a).  If the child is not engaged in substantial

19  gainful activity, then the analysis proceeds to step two.  Step two requires the ALJ to determine

20  whether the child's impairment or combination of impairments is severe.  Id.  The child will not

21  be found to have a severe impairment if it constitutes a "slight abnormality or combination of

22  slight abnormalities that causes no more than minimal functional limitations."  20 C.F.R. §

23  416.924(c).  However, if there is a finding of severe impairment, the analysis proceeds to the final

24  step.  Step three requires the ALJ to determine whether the impairment or combination of

25  impairments "meets, medically equals or functionally equals" the severity of a set of criteria for

26  an impairment in the Listing of Impairments ("listings").  20 C.F.R. § 416.924(d).

27  If an impairment does not meet the requirements of, or is not medically equal to, a listed

28  impairment, the claimant may still be disabled if his impairment or combination of impairments is

found to be "functionally equivalent" to a listed impairment.  In child disability cases, a "whole child approach" is used to determine functional equivalence.  R.S. by & Through Herrera v. Berryhill, 357 F. Supp. 3d 1033, 1037 (C.D. Cal. 2019).  That is, the ALJ considers all of the child's activities, "everything [the child does] at home, at school, and in [the] community."  20 C.F.R. § 416.926a(b).  Functional equivalence is measured by assessing the claimant's ability to function in the following six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do": (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.  20 C.F.R. §§ 416.926a(b)(1)(i)–(vi).  Limitations in functioning must result from the child's medically determinable impairments.  See 20 C.F.R. § 416.924a (describing considerations for determining disability for children).  An impairment or combination of impairments is functionally equivalent to a listing if it results in "marked" limitations in two areas, or an "extreme" limitation in one area of functioning.  20 C.F.R. § 416.926a(a).

## B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). The Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  In reviewing an ALJ's decision regarding a child's functional equivalence, the Court considers whether it is supported by substantial evidence.  See Howard v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (reviewing ALJ's functional-equivalence determination under substantial-evidence standard).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  Rather,

"[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006). Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff was seven years old at the time of the ALJ's decision on April 12, 2021. (See AR 202.) The ALJ conducted the three-step disability analysis set forth under 20 C.F.R. § 416.924(a) for claimants under the age of eighteen and issued the following findings of fact and conclusions of law:

(1) Plaintiff was born on June 22, 2013. Therefore, he was a preschooler (five years old) on January 23, 2019, the date the application was filed, and was a school-age child (seven years old) as of the date of issuance of the ALJ's decision on February 25, 2021. (AR 202, 208 (citing 20 C.F.R. § 416.926a(g)(2)).)

(2) Plaintiff has not engaged in substantial gainful activity since January 23, 2019, the application date. (AR 202 (citing 20 C.F.R. §§ 416.924(b), 416.971 et seq.).)

(3) Plaintiff has the following severe impairments: attention deficit/hyperactivity

disorder (ADHD), anxiety disorder, and mood disorder.  (Id. (citing 20 C.F.R. § 416.924(c)).)

(4)   At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. (citing 20 C.F.R. §§ 416.924, 416.925, 416.926).)

In reaching this determination, the ALJ noted Plaintiff's impairments are not characterized by frequent illnesses or attacks and functional limitations that satisfy the requirements of any listed impairment, and no medical consultant concluded that a listing was medically equaled. (AR 202–03.)  The ALJ determined Plaintiff did not meet the requirements for Listing 112.14 (developmental disorders in infants and toddlers), which is the only mental disorder that applies to children from birth to attainment of age three.  (AR 203.)  The ALJ determined Plaintiff did not meet the "paragraph B criteria" for children ages three to eighteen[4] for Listing 112.06 (anxiety and obsessive-compulsive disorders) or 112.11 (neurodevelopmental disorders) because he did not have at least two "marked" limitations or one "extreme" limitation.  More specifically, the ALJ determined Plaintiff had:

- A "moderate" limitation in the functional area of understanding, remembering, or applying information;

- A "marked" limitation in the functional area of interacting with others;

- A "moderate" limitation in the functional area of concentrating, persisting, or maintaining pace; and

- A "moderate" limitation in the functional area of adapting or managing oneself.

---

[4] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves.  20 C.F.R. § Pt. 404, Subpt. P, App. 1; see also 20 C.F.R. §§ 416.925 (describing ALJ's special technique for evaluating paragraph B criteria), 416.926 (explaining rules for evaluating medical equivalence).  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  Id.  Finally, a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  Id.

(AR 203.)   The ALJ also considered whether Plaintiff satisfies the "paragraph C" criteria contained in the listings, and determined he did not because there is no objective evidence in the medical record of the paragraph C requirements.  (AR 203–04.)

(5)    The ALJ determined that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings.  (AR 204 (citing 20 C.F.R. §§ 416.924(d), 416.926a).)

In reaching this functional equivalence determination, the ALJ applied the "whole child" standard[5] (*i.e.*, how Plaintiff functions at home, at school, and in the community; the interactive and cumulative effects of all of Plaintiff's medically determinable impairments on his activities; and the type, extent, and frequency of help Plaintiff needs) with respect to the six domains, and determined Plaintiff had the following limitations:

- A "less than marked" limitation in acquiring and using information;
- A "less than marked" limitation in attending and completing tasks;
- A "marked" limitation in interacting and relating with others;
- No limitation in moving about and manipulating objects;
- A "less than marked" limitation in caring for yourself; and
- A "less than marked" limitation in health and physical well-being.

(AR 204–08.)

(6)    Finally, the ALJ determined that Plaintiff has not been disabled, as defined in the Social Security Act, since January 23, 2019, the date the application was filed.  (AR 208 (citing 20 C.F.R. § 416.924(a)).)

///

///

///

---

[5] Similar to the paragraph B criteria, to functionally equal the listing under the "whole child" standard, a claimant's impairment of combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  SSR 09-1p, available at 2009 WL 396031 (Feb. 17, 2009); 20 C.F.R. § 416.926a.  In making this assessment, the ALJ must compare how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments, id., as discussed in greater detail herein.

1

2

**V.**

**DISCUSSION AND ANALYSIS**

Plaintiff challenges the ALJ's application of the "whole child" standard with respect to one of the six domains at step three of the disability inquiry.  He raises a single issue on appeal, characterized as follows: "The ALJ's functional equivalence analysis is not supported by substantial evidence as Claimant has marked limitations in attending and completing tasks as supported by the evidence of record."[6]  (ECF No. 25 at 3.)  Plaintiff argues that, if the ALJ had properly determined he had a "marked," and not "less than marked," impairment in this domain, the inquiry would have resulted in a finding of disability.

**A.      Legal Standards**

1.      <u>Rating Severity of Limitations in the Domains/Functional Equivalence</u>

Regarding functional equivalence, the ALJ must assess the interactive and cumulative effects of all the impairments supported by the evidence, both severe and nonsevere.  20 C.F.R. § 416.926a(a).  The ALJ is to consider all relevant factors, including but not limited to: (1) how well the child can initiate and sustain activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment.  <u>Id.</u> (citing 20 C.F.R. §§ 416.924a, 416.924b, 416.929).

The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independent the child is in functioning, and the more severe the limitation will be determined to be.  SSR 09-1P, at *7.

A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  It is "more than moderate" but "less than extreme."  <u>Id.</u>  A child's "day-to-day functioning may be seriously limited when [his or her] impairment(s) limits only one activity or when the interactive and

---

[6] Notably, Plaintiff does not challenge the ALJ's findings with respect to the severity of limitations in the other five domains.  Nor does Plaintiff challenge the ALJ's discounting of his mother's testimony and allegations, or the ALJ's evaluation of the medical opinion evidence proffered by Dr. Dian and state physicians.  As such, these and any other issues not expressly raised are deemed waived.  <u>See Lewis</u>, 236 F.3d at 517 n.13; <u>Indep. Towers of Wash. v. Wash.</u>, 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").

cumulative effects of [his or her] impairment(s) limit several activities."  Id.  It "is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."[7]  Id.  Thus, the Commissioner generally considers a child to have a "marked" limitation when he has a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [their] day-to-day functioning in domain-related activities is consistent with that score."  20 C.F.R. § 416.926a(e)(2)(iii).   Importantly, the Commissioner notes that test scores alone do not establish marked or extreme limitation in a domain, 20 C.F.R. §§ 416.924a(a)(1)(ii), 20 C.F.R. 416.926a(e)(4), as no single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain, 20 C.F.R. § 416.926a(e)(4)(i).

SSR 09-1P explains the multitude of factors and evidence that must be considered in evaluating the severity of the functional effect a claimant's impairment(s) has on each functional domain.  It provides

> To determine whether there is a "marked" or an "extreme" limitation in a domain, [the ALJ] use[s] a picture constructed of the child's functioning in each domain.  This last step in the "whole child" approach summarizes everything [the ALJ] know[s] about a child's limited activities. The rating of limitation in a domain is then based on the answers to these questions:
>
> 1. How many of the child's activities in the domain are limited (for example, one, few, several, many, or all)?
>
> 2. How important are the limited activities to the child's age-appropriate functioning (for example, basic, marginally important, or essential)?
>
> 3. How frequently do the activities occur and how frequently are they limited (for example, daily, once a week, or only occasionally)?
>
> 4. Where do the limitations occur (for example, only at home or in

---

[7] An "extreme" limitation, by comparison, "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  It is the rating given to "the worst limitations."  Id.  Nonetheless, it "does not necessarily mean a total lack or loss of ability to function."  Rather, it is "the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  20 C.F.R. § 416.926a(e)(3)(i).

1   all settings)?

2   5. What factors are involved in the limited activities (for example,
    does the child receive support from a person, medication, treatment,
3   device, or structured/supportive setting)?

4   Id. at * 7–10.  Notwithstanding the aforementioned questions, however, SSR 09-1p cautions that

5   "there is no set formula for applying these considerations in each case.  Id. at *9.  Instead, it

6   stresses the importance of considering the longitudinal record when evaluating the severity of the

7   child's limitations.  Id.  Further, an ALJ is not required to discuss all of the considerations in their

8   determinations and decisions, but must only provide sufficient detail so that a subsequent

9   reviewer can understand how the ALJ made his findings.  Id. at *3.

10          2.       Attending and Completing Tasks

11          In the domain of attending and completing tasks, the agency "considers how well you are

12  able to focus and maintain your attention, and how well you begin, carry through, and finish your

13  activities, including the pace at which you perform activities and the ease with which you change

14  them."  20 C.F.R. § 416.926a(h); see also SSR  09-4p, available at 2009  WL  39603  (Feb. 18,

15  2009).  Plaintiff was a preschooler (five years old) on January 23, 2019, the date the application

16  was filed, and he was a school-age child (seven years old) as of February 25, 2021, the date of the

17  ALJ's decision.  The regulations provide the following for the school-age child group:

18          (iv) School-age children (age 6 to attainment of age 12).  When you
            are of school age, you should be able to focus your attention in a
19          variety of situations in order to follow directions, remember and
            organize your school materials, and complete classroom and
20          homework assignments.  You should be able to concentrate on
            details and not make careless mistakes in your work (beyond what
21          would be expected in other children your age who do not have
            impairments).  You should be able to change your activities or
22          routines without distracting yourself or others, and stay on task and
            in place when appropriate.  You should be able to sustain your
23          attention well enough to participate in group sports, read by
            yourself, and complete family chores.  You should also be able to
24          complete a transition task (e.g., be ready for the school bus, change
            clothes after gym, change classrooms) without extra reminders and
25          accommodation.

26  20 C.F.R. § 416.926a(h)(2)(iv).

27          B.       Plaintiffs' Argument

28          Plaintiff argues the ALJ's functional equivalence analysis at step three of the child

10

disability inquiry is not supported by substantial evidence because the ALJ incorrectly determined Plaintiff has a "less than marked" (rather than marked) limitation in the domain area of "attending and completing tasks." (ECF No. 25 at 3, 10–16.) Plaintiff argues the ALJ "ignored probative evidence and mischaracterized the record" to reach an assessment of "less than marked" limitation in the "attending and completing tasks" domain; moreover, that he failed to articulate his reasoning for rejecting Plaintiff's favorable evidence. (Id. at 13.) Specifically, Plaintiff contends the ALJ failed to consider Dr. Nirmal Brar, M.D.'s March 2019 findings (AR 422–23); school psychologist Ser Cha's April 2019 evaluation regarding Plaintiff's "great difficulty attending to tasks …" and need for constant redirection (AR 466); and Plaintiff's June 2019 Individualized Education Program ("IEP"), which noted Plaintiff exhibited "significant behaviors associated with his ADHD diagnosis" (AR 442, 444–45). (ECF No. 25 at 13–14.)

Because the ALJ determined Plaintiff has a marked limitation in the domain area of "interacting and relating with others," which Plaintiff does not challenge, the additional finding that Plaintiff has a "marked" limitation in the domain of "attending and completing tasks" would have resulted in a determination of disability. Thus, Plaintiff argues the ALJ's error was not harmless and requires remand. (Id. at 15–16.)

**C.   Analysis**

1.   The ALJ Addressed and Accurately Summarized the Evidence of Record

With respect to Plaintiff's contention that the ALJ ignored relevant evidence to reach a nondisability determination—specifically Dr. Brar's March 2019 medical notes, Ms. Cha's April 2019 evaluation, and Plaintiff's June 2019 IEP—the Court finds such contention is belied by the record. That is, the ALJ expressly considered Dr. Brar's records (see AR 207 (citing AR 422–23)) and the June 2019 IEP (AR 440–95), which is inclusive of psychologist Cha's evaluation (see AR 206 (citing AR 442, 446, 451, 454, 457, 474, 477–79, 487, 493–94, 551)). For example, despite referring to Dr. Brar's records as "primary care notes dated March of 2019" without referencing Dr. Brar by name (AR 207), it is sufficiently clear from the ALJ's discussion of the medical notes and citation to the record that he is referencing the same records cited to by Plaintiff. Plaintiff's argument that the ALJ "ignored relevant evidence" is therefore unavailing.

See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned."); SSR 09-1p, at *3 (stating an ALJ is not required to discuss all of the considerations in their determinations and decisions, but must only provide sufficient detail so that a subsequent reviewer can understand how the ALJ made her findings; see also Drummer v. Kijakazi, No. 21-35710, 2022 WL 2953703, at *1 n.3 (9th Cir. Jul. 26, 2022) (citing Howard, 341 F.3d at 1012 ("[T]he ALJ does not need to discuss every piece of [medical] evidence.") (internal quotations omitted)); Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (the Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("[T]he ALJ's analysis need not be extensive."); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing SSR 96-8p) ("[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

Plaintiff also asserts the ALJ "mischaracterized the record" to reach his nondisability determination. This argument is equally unavailing. Notably, Plaintiff does not explain how he contends the ALJ "mischaracterized" the record, or identify which records were purportedly mischaracterized. Plaintiff's reliance on Jones v. Kijakazi, No. 21-16950, 2022 WL 4285597 (9th Cir. Sept. 16, 2022), is also unavailing.[8] Indeed, the Court notes a review of the record reflects

---

[8] In Jones, the court found the ALJ mischaracterized the record where he relied on and embellished upon two non-treating physicians' reports that the claimant could completed certain ADLs, while ignoring her allegations of pain symptoms that accompanied such activities, and cited to these partial records in order to reject the medical opinions of the claimant's treating physicians. Id. at *1–2. It is unclear how Plaintiff contends Jones is apposite to the instant matter. Notably, the ALJ did not reject any treating physicians' medical opinions as to Plaintiff's limitations in this case because there are no such opinions in the record. To the contrary, the ALJ considered the medical notes from Drs. Bayer and Brar—which contained potential diagnoses but no opinions as to Plaintiff's functional limitations—and noted the only treatment these doctors recommended for Plaintiff was a combination of medication and therapy. Indeed, the ALJ applied Plaintiff's treating physicians' recommendations of such "conservative" treatment in his evaluation of the subjective testimony (discussed in greater detail herein). Moreover, in Jones, the court found the ALJ's reasons for discounting the treating physicians' opinions insufficient under the pre-2017 regulations, which accorded superior weight to treating physicians' medical opinions, and only permitted such opinions to be rejected with "specific and legitimate reasons supported by substantial evidence." See Bayliss, 427 F.3d at 1216. Here, by contrast, the Court applies the 2017 revised Social Security regulations, which abrogated the particularized procedures ALJs were previously required to follow in considering opinions from treating sources. Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

that the ALJ's summaries of the medical and non-medical evidence accurately reflect what is contained in the record.  Furthermore, the ALJ not only considered the same reports and opinions in the record to which Plaintiff cites, as noted, but also other substantial evidence—such as Dr. Dian's "persuasive" expert testimony and the prior administrative medical findings—which Plaintiff does not address, but which are highly relevant to the longitudinal record and functional equivalence analysis.

Consequently, the Court finds the ALJ's functional equivalence analysis, including his finding that Plaintiff has "less than marked" limitations in the domain "attending and completing tasks" is supported by substantial evidence, as follows.

2.     The ALJ's Functional Equivalence Analysis is Supported by Substantial Evidence

As noted, under the "whole child approach" for determining functional equivalence, the ALJ must consider all of the child's activities; "everything [the child does] at home, at school, and in [the] community"; the interactive and cumulative effects of all of Plaintiff's medically determinable impairments on his activities; and the type, extent, and frequency of help Plaintiff needs), R.S., 357 F. Supp. 3d at 1037; 20 C.F.R. § 416.926a(b), with respect to the aforementioned six domains.  20 C.F.R. §§ 416.926a(b)(1)(i)–(vi).

Here, the ALJ applied the "whole child" standard and determined Plaintiff has "less than marked" limitations in the domains of "acquiring and using information," "attending and completing tasks," "caring for yourself," and "health and physical well-being"; no limitations in the domain of "moving about and manipulating objects"; and a marked limitation in the domain of "interacting and relating with others."  (AR 204.)  The Court finds the ALJ properly considered and evaluated the longitudinal record to complete the functional equivalence analysis.

a.     **The ALJ Properly Considered the Objective Medical and Academic Evidence in the Record and Discounted the Symptom Testimony**

The ALJ noted Plaintiff's mother reported Plaintiff's impairments are treated with prescription medication, including Adderall and Risperdal and, subsequently, an increased dosage of Ritalin.  (AR 205.)  She reported Plaintiff has been diagnosed with ADHD/Separation anxiety/mood disorder.  She reported that Plaintiff has friends his own age but could not make

13

new friends and generally does not get along with schoolteachers. She reported Plaintiff is defiant, shuts down, talks about dying, cannot be alone, soils his pants, and runs out of class and away from adults; that he can become aggressive; that he is hyperactive and cannot stay still. She testified that Plaintiff's symptoms have continued to progress over time; that Plaintiff was dismissed from his first daycare center due to behavioral problems when he was three years old, and has continued to exhibit behavioral problems since then. She testified she got frequent calls from Plaintiff's elementary school teacher about Plaintiff's behavior when he was in kindergarten. She testified Plaintiff received one on one support through an IEP at school, but is now being homeschooled with instructions from his teacher via zoom, due to the coronavirus pandemic as well as his behavior problems. She also reported Plaintiff is capable of engaging in numerous physical activities, including walking, running, throwing a ball, riding a bike, and working video game controls. She reported Plaintiff has difficultly reading, but does ok in math. (AR 206.) She also reported that, prior to covid, Plaintiff visited an onsite counselor at school on a weekly basis, and that he was comfortable with and enjoyed those appointments.

The ALJ determined Plaintiff's mother's testimony concerning the intensity, persistence and limiting effects of Plaintiff's symptoms are not entirely consistent with the medical evidence and other evidence of record. See 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (a claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability); Lambert, 980 F.3d at 1277 ("the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.").

First, the ALJ noted the symptom allegations and testimony were inconsistent with the medical evidence. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). For example, the ALJ noted Plaintiff was not taking any medication in June 2019, when he was placed in an IEP. (AR 206 (citing AR 442, 446, 451).) In another example going to the severity of Plaintiff's symptoms, the ALJ noted when Plaintiff was examined in the emergency department by Dr. Matthew Bayer, M.D., in December 2018

following a behavior disturbance at school, the medical examination did not reveal anything physically concerning.  Further, Dr. Bayer opined Plaintiff might have an undiagnosed psychiatric disorder or possible severe ADHD; however, only therapy was recommended.  (AR 207 (citing AR 397–415, 527).)

The ALJ also noted the academic testing and records did not fully support or were inconsistent with the symptom allegations.  For example, the ALJ noted that academics show Plaintiff scored average and above average in math, lower in letter and word recognition, with some strength in problem solving.  The ALJ also noted Plaintiff's IEP records indicated the primary concern for Plaintiff was his behavior regarding impulsivity and attention; that he did best in the small group setting, but would still need one-on-one direction.  (AR 206 (citing AR 457).)  The ALJ considered Plaintiff's full-scale IQ ("FSIQ") score of 85, which included a 93 in verbal comprehension; a 97 in visual spatial testing; a 97 in fluid reasoning; an 87 in working memory; an 83 in processing speed.  (Id. (citing AR 477).)  The ALJ also considered the findings of the examiner, school psychologist Ser Cha, who opined that Plaintiff's Wechsler Preschool and Primary Scale of Intelligence–Fourth Edition ("WPPSI-IV") scores should be viewed with caution due to his impulsive behaviors and inconsistency with focus; namely, that the scores might be an underrepresentation of Plaintiff's true cognitive ability and therefore should be viewed with caution.  (Id. (citing AR 474, 478–79).)  The ALJ noted Ms. Cha considered Plaintiff to be a capable learner who was meeting grade level standards.  (Id. (citing AR 487).)  The ALJ also considered Plaintiff's testing scores on the Kaufman Test of Education Achievement-Third Edition ("KTEA-III"), which yielded mostly average scores, other than a below-average score in reading and an above-average score in math.  And the ALJ noted Plaintiff's June 2019 IEP indicates Plaintiff is able to communicate his needs and express his ideas, that he is talkative and able to respond appropriately to verbal questions, and that oral vocabulary is a strength for him. (Id. (citing AR 551).)  The ALJ also considered Plaintiff's May 2020 IEP, which indicates Plaintiff spent 92% of the time in regular class and only 8% of the time outside the regular class. (Id. (citing AR 583).)  The ALJ concluded Plaintiff's nearly average academic test results did not support a finding of "marked" limitations in the functional domain of "attending and completing

tasks."

The ALJ also reached an adverse credibility determination as to symptomology based on his finding that Plaintiff's treatment was "routine, infrequent, and conservative."  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).  The ALJ noted Plaintiff does not require frequent or ongoing therapy from one or more kinds of health care professionals to maintain or improve his functional status; and that Plaintiff does not have any chronic illness requiring frequent and lengthy hospitalizations; or episodes of exacerbation that significantly interfere with functioning on a longitudinal basis.  (AR 206–07.)  To the contrary, the ALJ noted that, after a behavior disturbance in school in December 2018, Plaintiff was examined and the only recommendation was therapy.  (AR 207 (citing AR 397–415, 527)); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  The ALJ also considered it significant that, while Plaintiff was referred to psychology, there is no objective evidence showing Plaintiff actually followed through with the recommended therapy outside the classroom setting.  (AR 207 (citing AR 527, 566, 619).)  As the ALJ may consider lack of treatment, or failure to follow through with treatment in reaching an adverse credibility determination, this evidence also constitutes substantial evidence in support of the ALJ's findings.  Burch, 400 F.3d at 681 ("[t]he ALJ is permitted to consider lack of treatment in his credibility determination."); Stenberg v. Comm'r Soc. Sec. Admin., 303 Fed. App'x 550, 552 (9th Cir. 2008) (finding noncompliance with recommended treatments, such as attending only half of scheduled therapies and refusing psychological counseling and continued physical therapy, constituted substantial evidence in support of finding the claimant was not entirely credible).

At bottom, the ALJ considered Plaintiff's allegations—which mostly focused on his difficult interactions with teachers and peers—and determined Plaintiff's impairments cause "marked" limitations in the domain of "interacting and relating with others," as well as some limitations in the other functional domains.  However, to the extent Plaintiff alleged limitations

causing total disability, the ALJ discounted the symptom allegations and testimony based on their inconsistencies with the medical and academic record.  Plaintiff does not challenge the ALJ's evaluation of the symptom evidence and thereby waives such challenge.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.  The Court therefore finds the ALJ's evaluation of the symptom allegations was properly supported by substantial evidence.

### b.      The ALJ Properly Weighed the Medical Opinion Evidence

The ALJ relied on the independent and impartial medical expert Dr. Donald Dian, M.D., who reviewed Plaintiff's records and provided testimony at the hearing as to Plaintiff's impairments and limitations.  Dr. Dian testified that Plaintiff exhibits many mental health symptoms—including aggression toward other children, anger, outbursts, flaunting not subscribing to authority.  (AR 207 (citing AR 168–80, 416–27, 439–95).)  Dr. Dian also noted several diagnoses in the record—including separation anxiety, attention deficit disorder with poor impulse control, attention deficit disorder, conduct disorder, and anxiety disorder—however, he cautioned against placing too much emphasis or reliance upon a mere diagnosis, "especially in mental health [cases]," because "whenever you encounter … a divergency of diagnoses, [there is a possibility that] there is something underlying that has not yet been diagnosed or exposed." (AR 169–70.)  In demonstrating the lack of medical support for certain diagnoses or findings, Dr. Dian testified the record is devoid of any "real laboratory tests," and only includes "screening tests, [and] questionnaire type tests, which the school has done…."  (AR 170.)  Dr. Dian also testified that the records indicate Plaintiff is stressed at times, but that he is healthy.

Based on his review of the record, Dr. Dian opined that Plaintiff's impairments do not equal any Listing.  (AR 171.)  Dr. Dian testified that, based on the Kaufman evaluation and other aptitude test results, Plaintiff "is of average intelligen[ce]"; and that the only area in which Plaintiff fell below average was in reading.  (AR 171–72.)  Dr. Dian further opined that Plaintiff's impairments cause him no restrictions in "acquiring and using information," and "moving about and manipulating objects"; that Plaintiff's impairments cause him "less than marked" restrictions in "attending and completing tasks" and "caring for self"; and that Plaintiff's impairments cause him a "marked" limitation in "interacting and relating with others."

17

Specifically, regarding the domain of "attending and completing tasks," Dr. Dian explained Plaintiff has a "less than marked" limitation in that domain because sometimes he refuses to complete tasks, but at other times, he is capable of completing them.  (AR 173.)  For example, Dr. Dian noted the IEP and classroom observations show "yes, he does have some problems with it, but he is able to get enough out of school … He doesn't miss out a great deal."  (AR 172.)  To that point, Dr. Dian noted Plaintiff receives 90 minutes per month through the school, a special classroom, and 30 minutes per week of resource room, which ensures Plaintiff had his academic assignments—and nothing further was warranted.  (Id.)  In fact, Dr. Dian noted Plaintiff "does very well in those settings."  (AR 173.)

The ALJ found Dr. Dian's medical opinion to be very persuasive, as it was based on all of Plaintiff's school and medical records, and was supported by that evidence.  (AR 208.)  This is evidenced by the fact that the ALJ ultimately adopted Dr. Dian's opinion as to Plaintiff's functional limitations in the domains of "moving about and manipulating objects," "caring for self," "interacting and relating with others," and—importantly—"attending and completing tasks."  (Compare AR 204 with AR 168–76, 208.)

The ALJ also considered the prior administrative medical findings[9] of state agency psychological consults, Anna M. Franco, Psy.D., and E. Murillo, M.D.  (AR 208 (citing AR 177–85, 187–96).)   Dr. Franco opined Plaintiff has severe impairments of attention deficit/hyperactivity disorder and anxiety/obsessive-compulsive disorders.  (AR 181.)  Based on her review of Plaintiff's records, she opined that Plaintiff has "less than marked" limitations in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating with others," and no limitations in the remaining domains.  (AR 182.)

---

[9] Under the applicable regulations for evaluating medical evidence, State agency medical and psychological consultants do not provide "medical opinions."  Rather, the new regulations use the term "prior administrative medical finding" to refer to findings "about a medical issue" made by the State agency medical and psychological consultants who review a claimant's medical file at the initial and reconsideration levels of the administrative process.  20 C.F.R. § 404.1513(a)(5) (listing examples of types of findings, such as the existence/severity of impairments or a claimant's RFC).  ALJs, however, must consider this evidence under the same rules that apply to "medical opinions" because these "consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513(b)(1); see also 20 C.F.R. §§ 404.1513(a) (identifying "medical opinions" and "prior administrative medical findings" as categories of evidence an ALJ must consider), (a)(2) (defining "medical opinions").

Dr. Murillo affirmed these findings on reconsideration.  (AR 193.)  The ALJ deemed these findings to be persuasive to the extent that they are generally consistent with the evidence of record as a whole and supported by the objective medical evidence of record.  (AR 208.)

At bottom, in performing the functional equivalent analysis as to the six domains, the ALJ considered the opinions of the prior administrative medical findings, and the expert opinion of Dr. Dian, both of which opined Plaintiff's limitation was "less than marked" in the at-issue domain, and which the ALJ found to be persuasive.  Plaintiff has not challenged the ALJ's evaluation of the medical opinion evidence and thereby waives such challenge.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.  Having determined the ALJ properly evaluated these medical opinions as persuasive based on substantial evidence in the record, the Court notes it was proper for the ALJ to rely on such opinions in his functional equivalence analysis.

**c.      The ALJ Properly Synthesized the Medical and Non-Medical Evidence**

Based on the foregoing record, the Court concludes the ALJ reasonably interpreted the objective medical and non-medical evidence and substantial evidence supports the ALJ's relevant findings.   Therefore,  the  ALJ's  functional  equivalence  analysis  was  properly  supported  by substantial evidence.  Howard, 341 F.3d at 1011.

Plaintiff does not challenge the ALJ's discounting of the symptom evidence or the ALJ's evaluation and reliance on the medical opinion evidence; nor does Plaintiff address this evidence in support of his argument that the ALJ should have deemed him to have a "marked" (and not "less than marked") limitation in the domain of "attending and completing tasks."   Rather, Plaintiff's arguments appear, at most, to present an alternative interpretation of the evidence.[10] However, as best expressed by the Ninth Circuit in Gardner v. Barnhart:

> [The claimant] also asserts that the ALJ took medical reports out of
> context and relied on them as such in making his decisions.

---

[10] Even this characterization, however, is questionable.  Plaintiff relies heavily on the treatment notes of Dr. Brar, for example, but neither Dr. Brar nor any other physician asserts a medical opinion that Plaintiff has a "marked" limitation in the domain of "attending and completing tasks."  Nor does any medical provider opine that Plaintiff's impairments functionally equal the severity of any Listing.  Plaintiff also relies on his mother's symptom allegations and testimony to support his argument, without addressing the substantial evidence identified by the ALJ which supports the discounting of those symptoms, or challenging the ALJ's evaluation of the symptom evidence.  This, too, cuts against a finding that Plaintiff has adequately supported his own argument that he has a "marked" limitation in the at-issue functional domain.

The ALJ weighed all of the evidence he credited. The medical evidence in this case is extensive and could be interpreted in various ways. The ALJ interpreted it in a reasonable manner. When the evidence presented could support either affirming or reversing the Commissioner's conclusions, this court cannot substitute its own judgment for that of the Commissioner. Here, despite any allegation of evidence taken out of context, the ALJ's conclusions are supported by substantial evidence. The ALJ supported his evaluation with articulated analysis of the evidence and citation to specific substantial evidence in the record. He cited specific reports for his conclusions and gave sufficient legitimate reasons for rejecting others. This is all that he is required to do.

Gardner v. Barnhart, 73 Fed. App'x 193, 195 (9th Cir. 2003) (citing Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)). Thus, while Plaintiff generally disagrees with the ALJ's findings, as previously noted, his presentation of an alternative "rational" interpretation of the evidence is not sufficient to establish reversible error. See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted); Smartt v. Kijakazi, 53 F.4th 489, 499–500 (9th Cir. 2022).

In sum, the ALJ properly evaluated, weighed, and synthesized the medical and non-medical evidence, resolved conflicts, and determined credibility issues, see Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007), and his findings under the functional equivalence analysis were supported by substantial evidence. Accordingly, the ALJ's decision must be affirmed.

**VI.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (ECF No. 25) is DENIED;

2.      Defendant's cross-motion for summary judgment (ECF No. 30) is GRANTED; and

///

///

///

///

1
2
3
4

    3.    The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Elora Elmer, on behalf of Minor Plaintiff C.R.F., and close this case.

IT IS SO ORDERED.

5
6

Dated:   **August 18, 2023**

_____
UNITED STATES MAGISTRATE JUDGE

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28